1
2
3
4
5

ALYSSON SNOW (Bar No. 225185)
KATHLEEN BOX (RLSA Bar No. 802675)
**Legal Aid Society of San Diego, Inc.**
110 South Euclid Avenue
San Diego, California 92114
Tel.: 619-471-2655
Fax: 619-263-5697
alyssons@lassd.org
kathleenb@lassd.org

6
7

*Attorneys for Plaintiff*
Robert Unser

8
9

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBERT UNSER,

Plaintiff,

vs.

WESTERN RIVERSIDE COUNCIL
OF GOVERNMENTS, a California
public, non-profit corporation;
RENOVATE AMERICA, INC., a
Delaware corporation;
CALIFORNIA STATEWIDE
COMMUNITY DEVELOPMENT
AUTHORITY, a California public,
non-profit corporation; RENEW
FINANCIAL GROUP, LLC; a
Delaware limited liability
corporation; RENEW FINANCIAL,
LLC *formerly known as* RENEW
FINANCIAL I, LLC, a Delaware
limited liability corporation;
RENEW FINANCIAL GROUP,
LLC *formerly known as*
RENEWABLE FUNDING, LLC, a
Delaware corporation; QUALITY
HOME RENOVATORS, INC., a
California corporation; THE
WESTERN SURETY BOND
COMPANY, a South Dakota
corporation; REVERSE
MORTGAGE SOLUTIONS, INC., a
Delaware corporation; DOES 1
THROUGH 10, inclusive,

Defendants.

CASE NO.  '18CV0552 AJB  MDD

**COMPLAINT FOR:**

- **VIOLATIONS OF FEDERAL DOOR-TO-DOOR SALES ACT, 16 CFR §429.1;**
- **VIOLATIONS OF CALIFORNIA HOME SOLICITATION ACT;**
- **FRAUD;**
- **NEGLIGENCE;**
- **VIOLATIONS OF CALIFORNIA WELFARE & INSTITUTIONS CODE §15610.07;**
- **VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §7160;**
- **RECOVERY OF CONTRACTORS BOND;**
- **VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMDIES ACT; and,**
- **VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW.**

DEMAND OF JURY TRIAL

-1-

Plaintiff Robert Unser complains and alleges against Defendant WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California public, non-profit corporation ("WRCOG"); Defendant RENOVATE AMERICA, INC., a Delaware corporation ("Renovate America"); Defendant CALIFORNIA STATEWIDE COMMUNITY DEVELOPMENT AUTHORITY, a California public, non-profit corporation ("CSCDA"); Defendant RENEW FINANCIAL, LLC *formerly known as* RENEW FINANCIAL I, LLC, a Delaware limited liability corporation; Defendant RENEW FINANCIAL GROUP, LLC *formerly known as* RENEWABLE FUNDING, LLC, a Delaware corporation (collectively Renew Financial, LLC and Renewable Funding, LLC are referred to herein as "Renew Financial"); Defendant QUALITY HOME RENOVATORS, INC, a California corporation ("Quality Home"); THE WESTERN SURETY COMPANY, a South Dakota corporation ("Bond Company"); REVERSE MORTGAGE SOLUTIONS, INC., a Delaware corporation ("Reverse Mortgage Solutions"); and DOES 1 through 10, inclusive, as follows:

## **INTRODUCTION**

1.     Federal and California law protects consumers from unfair, deceptive, and predatory contractors in door-to-door home solicitations.  Defendants have violated these laws.  Mr. Unser's experience with the contractor and the Property Assessed Clean Energy ("PACE") program highlights a growing trend evincing that, in the hands of unscrupulous contractors and PACE providers, PACE-related transactions have morphed into a price-gouging, equity-stripping scheme that has a devastating impact on elderly homeowners.  His story shows how elderly folks, in particular falling victim PACE-related fraud.  He is a 73 year-old man with severe mental and physical limitations whose sole source of income is social security.  In a door-to door sales, Defendants engaged in fraudulent sales tactics, churned him into a series of home improvement and finance contracts, and charged exorbitant

1    amounts for the services provided.  Defendants have willfully violated the

2    consumer laws designed to protect people like Mr. Unser and have directly caused

3    him to suffer damages, including monetary damages, imminent foreclosure, priority

4    liens on his home, and stress-related health issues.

5                                                **PARTIES**

6          2.     Mr. Unser is an elderly individual, in his seventies, and is a resident of

7    San Diego County, California.

8          3.     Defendant Western Riverside Council of Governments is a non-profit,

9    public benefit corporation, with its principal place of business located at 4080

10   Lemon Street, 3rd Floor, Riverside, CA 92501-3609. On information and belief,

11   WRCOG is a joint exercise of powers authority.  On information and belief, its

12   territory includes projects in San Diego, California.  On information and belief,

13   Defendant WRCOG was and is engaging in and transacting in business in

14   California at all relevant times in this Complaint.

15         4.     Defendant Renovate America, Inc. is a Delaware corporation that was

16   and is engaging in and transacting business in California at all relevant times in this

17   Complaint.  Renovate America's principal business office is located at 16409 West

18   Bernardo Drive, San Diego, California 92127.  On information and belief,

19   Renovate America's business entity license number is C3188539.

20         5.     On information and belief, Renovate America is licensed with the

21   California Department of Business Oversight, license type California Finance

22   Lender ("CFL"), license number 60DBO-34578, effective date January 4, 2012.

23   On information and belief, the license status is inactive at the present time.

24         6.     Defendant California Statewide Community Development Authority is

25   a non-profit, public benefit corporation. On information and belief, it is a joint

26   exercise of powers authority.  On information and belief, its principal place of

27   business is located at 1700 North Broadway, Walnut Creek, CA 94596.  On

28   information and belief, its territory includes projects in San Diego, California.  On

                                                  -3-

1   information and belief, Defendant CSCDA was and is engaging in and transacting

2   in business in California at all relevant times in this Complaint.

3         7.     Defendant Renew Financial, LLC is a Delaware corporation with a

4   principal place of business located at 1221 Broadway, Oakland, CA 94612.  On

5   information and belief, it was and is engaging in and transacting business in

6   California at all relevant times in this Complaint.  Renew Financial, LLC's business

7   entity number in California is 201517310208.

8         8.     Defendant Renew Financial Group, LLC is the parent company to

9   Defendant Renew Financial, LLC.  On information and belief, it is a Delaware

10  corporation with a principal place of business located at 1221 Broadway, Oakland,

11  CA 94612.  On information and belief, it was and is engaging in and transacting

12  business in California at all relevant times in this Complaint.  Its business entity

13  number in California is 201627110570.

14        9.     On information and belief, Renew Financial is licensed with the

15  California Department of Business Oversight, license type California Finance

16  Lender ("CFL"), license numbers 60DBO-4522; 60DBO-45523; and, 60DBO-

17  73201.  On information and belief, the licenses statuses are active.  It is also

18  licensed with the National Mortgage Licensing System and Registry (ID No.

19  1547357.  These lending licenses are listed on Renew Financial's website.

20       10.    Defendant Quality Home Renovators, Inc. is a California corporation

21  with a principal place of business located at 6450 Lusk Blvd. #108, San Diego, CA

22  92121.  It was and is engaged in business in California at all times relevant in this

23  Complaint.  Quality Home is a licensed contractor in California, license no.

24  959548.

25       11.    Defendant Bond Company is the bond agency holding the bond for

26  Quality Home.  The bond number is 71056234.  On information and belief, this

27  bond was effective at the time of the transaction at issue.  For the relevant period,

28  the bond amount was $12,500.00.  On information and belief, Bond Company is a

-4-

South Dakota corporation, engaging and transacting in business in California at all relevant times in this Complaint.  On information and belief, its principal place of business is 101 S. Reid Street, Suite 300, Sioux Falls, SD 57103-7046.

12.     On information and belief, Defendant Reverse Mortgage Solutions is a Delaware corporation engaged in business in California at all relevant times in this Complaint.  On information and belief, the primary business address 14405 Walters Road, Suites 110, 200, 300, 400, and 500, Houston, TX 77014.  Its California business entity number is C2974628.  On information and belief, Reverse Mortgage Solutions is the loan servicer of the reverse mortgage on Mr. Unser's property.  It is named as a non-monetary party to this litigation.  On information and belief, it was engaged in and continues to engage in business in California.

13.     The true names and capacities of Defendants DOES 1 through 10 are unknown to Plaintiff, and Plaintiff will seek leave of court to amend this complaint to allege such names and capacities as soon as they are ascertained. Each of the Defendants herein was the agent, joint venture, or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, each was acting in the course and scope of said agency, employment or joint venture with advance knowledge of, acquiescence in or subsequent ratification of the acts of each and every other remaining defendant. Each of Defendants DOES 1 through 10 is responsible, legally, negligently, or in some other actionable manner, for the events and happening hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged, either through co-defendants' conduct or through the authorized and/or ratified conduct of its agents, servants or employees or in some other manner.

## JURISDICTION AND VENUE

14.     This court has original jurisdiction over Plaintiff's claims arising under Title 16 of the Code of Federal Regulations section 429.1, pursuant to Title 28 of the United States Code section 331 for federal question jurisdiction.

15.     Plaintiff's state law claims are so related to those under which this court has original jurisdiction as they are part of the same case and controversy. Supplemental jurisdiction is therefore appropriate over Plaintiff's remaining claims pursuant to 28 U.S.C. §1367.

16.     Venue is proper in this Court pursuant to Title 28 of the United States Court section 1391(b), because the transactions and occurrences that give rise to this law suit occurred here and Defendants conduct business within this district.

## FACTUAL ALLEGATIONS

### *PACE Financing Program*

17.     In a letter dated June 18, 2009, the Federal Housing Finance Agency's (FHFA) Director James Lockhart advised banking and creditor trade groups, as well as associations for mortgage regulators, governors and state legislators, of "an emerging trend in state and local financing for residential energy efficiency home improvements."[1]  Director Lockhart was referring to the rise of the Property Assessed Clean Energy ("PACE") financing program.

18.     As originally conceived, the PACE program was designed to achieve the public purposes of environmental and health benefits and energy independence.

19.     The PACE program purports to finance "green" home renovations. PACE financing is generally for 15 to 20 years, secured with a priority lien against the home, and paid through a voluntary property tax assessment.

20.     While clean energy is attractive, Director Lockhart cautioned that "such programs must be carefully crafted to avoid ***unintended consequences*** for homeowners and lenders."[2] (Emphasis added).

21.     Mr. Unser is suffering the unintended consequences of the PACE program, of which Director Lockhart had warned.

---

[1]  *Cal. ex rel. Harris v. Fed. Housing Fin. Agency*, 894 F. Supp. 2d 1205, 1210-1211 (N.D. Cal. Aug. 9, 2012).

[2]  *Id.*

22.     While PACE is a national initiative, the actual PACE programs are local projects.

23.     PACE is not a government program.

24.     The PACE programs at issue herein are sponsored and administered by Defendants WRCOG and CSCDA.  On information and belief, Defendants CSCDA and WRCOG are authorized to finance energy efficient home improvement projects through voluntary property tax assessments, pursuant to California Streets and Highways Code, chapter 29 of Division 7 and the issuance of bonds pursuant to the Improvement Bond Act of 1915, California Streets and Highways Code sections 8500, *et seq*.

25.     WRCOG and CSCDA issue improvement bonds, which Renovate America and Renew Financial in turn purchase, securitize, and sell to investors. The proceeds of these transactions fund tax assessments to eligible home improvement projects.

26.     The homeowner agrees to a voluntary property tax assessment, which is recorded as a priority lien on the home—meaning the local PACE program has a priority lien over even the first mortgage lender.[3]

27.     These are high cost financing products, often at an interest rate almost double the rate for a home equity loan or other secured financing.  They are secured financing products with priority liens.

/////

/////

_____

[3]   The Federal House Finance Agency ("FHFA"), Fannie Mae, and Freddie Mac have all expressed serious concerns with this program and its consequences for consumers and mortgage lenders.  *Cal. ex rel. Harris v. Fed. Housing Fin. Agency*, 894 F. Supp. 2d 1205, 1211 (N.D. Cal. Aug. 9, 2012).  On February 16, 2010, the FHFA described the deficiencies in the PACE program in its document, "Market and legal Issues Related to Energy Loan Tax Assessment Programs."  *Id*.  On August 31, 2010, Fannie Mae and Freddie Mac issued a statement that it would not purchase PACE encumbered property's mortgages. *Id*. at 1214.

### *Need for Consumer Protections*

28.     As this is an high cost financial product with a priority lien attaching to the homeowner's residence, each local PACE program is encouraged to voluntarily adopt several specific measures to protect consumers, including: a "savings to investment ratio" that is greater than one; financing limited to investments that have a high return on energy efficiency gains; and renovations based on an energy audit or presumptively efficient projects and performed by only licensed auditors and contractors. [4] The local PACE programs are also encouraged to institute a quality assurance protocol.[5]

29.     These consumer protections are vital because of the atypical nature of the PACE program financing.  Funding through property tax assessments with a priority lien exposes homeowners to a unique and distinct risk for foreclosure.

30.     Further, consumer protections are necessary because there is no real regulatory supervision of the local PACE programs.  Traditional consumer financing is regulated by several organizations—the Consumer Financial Protection Bureau, the Department of Energy, and the California Department of Business Oversight.  At present, none of these agencies are regulating PACE lenders or servicers.

31.     Essentially, the local PACE programs are left to "regulate" themselves—the fox watching over the hen house.

### *Lack of Consumer Protection*

32.     Here, Defendants WRCOG, Renovate America, CSCDA, and Renew Financial failed to include numerous of these voluntary, but vital consumer protections from their policies and procedures.

---

[4]  White House's "Policy Framework for PACE Financing Programs," October 18, 2009; 2011 PACE Pilot Program Guidelines; Department of Energy released Best Practice Guidelines for Residential PACE Financing Programs, November 2016, updated from the one previously issued in 2010.

[5]  *Id.*

33.     Defendants have opted to not adopt many of the important consumer protection guidelines of the White House, the Department of Energy, and the FHFA to the peril of consumers.

34.     Defendants WRCOG and Renovate America sponsor and administer the HERO program, a local PACE program, which covers, in part, San Diego County.

35.     The WRCOG advertises that HERO adheres to the PACE Consumer Protection Policies.[6]

36.     WRCOG claims it "sponsors PACE programs (Programs) administered by third-party providers (Providers).  These Providers deliver tools and resources that enable property owners to make smart, informed and responsible choices regarding such Measures."[7]

37.     These claims are dubious.  WRCOG and Renovate America withhold information to make informed decisions about funding.  These companies have asserted they are not required to comply with the federal Truth in Lending Act and Regulation Z ("TILA") and do not comply with TILA regarding the basic disclosures to inform consumers about the true costs of a loan.

38.     Likewise, Defendants CSCDA and Renew Financial sponsor and administer the CaliforniaFirst "CalFIRST" program, a local PACE program, which covers, in part, San Diego County.

/////

/////

/////

---

[6]  *See* Defendant WRCOG's website page, titled, WRCOG PACE Programs," http://www.wrcog.cog.ca.us/230/PACE-Programs, March 13, 2018.

[7]  *See* Defendant WRCOG's Residential Property Assessed Clean Energy Consumer Protections Policy, http://www.wrcog.cog.ca.us/DocumentCenter/View/2737, adopted February 5, 2018, at *3.

-9-

39.     The CalFIRST program claims to adhere to the May 2016 PACE Consumer Protection Policies.[8]

40.     CSCDA claims, "These Policies provide homeowners with a greater level of consumer protection than any other form of financing."[9]  This is false. CSCDA and Renew Financial do not comply with the disclosure requirements of this TILA.

### *Lack of Consumer Protection:  No Ability to Pay Requirement*

41.     First, Defendants WRCOG, Renovate America, CSCDA, and Renew Financial excluded consideration of a homeowner's "ability to pay" the assessments, at the time the transactions in question occurred, an underwriting requirement.[10]  An ability to repay a loan requirement prevents homeowners from entering into loans they cannot afford and protects investors' interests in repayment, as well.

42.     WRCOG and Renovate America's HERO program did not consider a consumer's ability to pay the property tax assessments when the transactions in question occurred.

43.     Rather, the HERO program focused on the property owner's ability to repay as the key factor in determining eligibility.  The HERO program focused on the value of the property itself, *i.e.* whether the lender can protect its investment through foreclosure.

---

[8]  *See* Defendant CSCDA's Consumer Protection Policies, http://cscda.org/Open-PACE/Documents/PACE-Consumer-Protection-Polices-final-12-1-15, dated February 2, 2017.

[9]  *See* Defendant CSCDA's Consumer Protection Policies, http://cscda.org/Open-PACE/Documents/PACE-Consumer-Protection-Polices-final-12-1-15, dated February 2, 2017.

[10]  Many still reeling from the Great Recession and the subprime mortgage crisis, remember well the cautionary lessons of providing financing absent underwriting requirements regarding a consumer's ability to repay the loan—for example, the practice of approving loans based on "income stated."

44.     Likewise, CSCDA and Renew Financial's CalFIRST program did not consider a consumer's ability to pay the property tax assessments when the transactions in question occurred either.

45.     The CalFIRST program, like the HERO program, focused on the value of the property and if it would be sufficient to cover the investment via foreclosure.

46.     The PACE program's annual assessments can even exceed a homeowner's annual income, as they do here.  Mr. Unser's sole source of income is social security.  He makes around $10,000.00 a year.  His yearly PACE property tax assessments exceeds his annual income.  As in Mr. Unser's case, homeowners may have to pay more money in tax assessments than they make in a year.

47.     The result is that many consumers find themselves in financing they cannot afford.

48.     It is important to note, Defendants ***could*** consider a homeowner's "ability to pay" the assessments, but choose not to do so.

### *Lack of Consumer Protection: No Implementation of "Savings to Investment Ratio" Greater than One*

49.     In addition to failing to include the "ability to pay" in their underwriting requirements, WRCOG, Renovate America, CSCDA, and Renew Financial have not adopted other significant measures recommended and designed to protect homeowners.

50.     For example, WRCOG, Renovate America, CSCDA, and Renew Financial did not adopt a requirement that the projects meet the "savings to investment" ratio—meaning the improvements pay for themselves through energy savings over time.

51.     The PACE program guidelines stress that PACE financing should be limited to cost effective measures that "pay for themselves."[11]

---

[11]   *See* United States Department of Energy, "Guidelines for Pilot PACE Financing Programs," dated May 7, 2010,

52.   Specifically, the guidelines direct, "The financed package of energy improvements should be designed to pay for itself over the life of the assessment."[12]  The guidelines indicate that the Savings-to-Investment Ratio (SIR) should be greater than one.

53.   Defendants WRCOG, Renovate America, CSCDA, and Renew Financial refused to follow these guidelines to limit the home improvements to cost effective improvements that pay for themselves.

54.   Mr. Unser's home improvement projects will not pay for themselves.

***Lack of Consumer Protections: Weak and Unenforced Anti-Fraud Measures***

55.   WRCOG, Renovate America, CSCDA, and Renew Financial fail to follow the guidelines and recommendations to draft, implement, and maintain recommended quality and anti-fraud measures.

56.   The guidelines recognized that "[q]uality assurance and anti-fraud measures are essential protections for property owners, mortgage holders, investors, and local governments."[13]

57.   As such, the guidelines require the hiring of only validly licensed contractors that adhere to the PACE program's terms and conditions.  In the event that the contractor's work is not properly performed, PACE guidelines advise that the program refrain from paying the contractor until the work is satisfactorily remedied.  Non-compliant contractors who fail to remedy work issues should be disqualified from further PACE work.[14]

/////

---

https://www1.eere.energy.gov/wip/pdfs/arra_guidelines_for_pilot_pace_programs.pdf at *2.

[12] *See* United States Department of Energy, "Guidelines for Pilot PACE Financing Programs," dated May 7, 2010, https://www1.eere.energy.gov/wip/pdfs/arra_guidelines_for_pilot_pace_programs.pdf at *2.

[13] *Id*. at *4.

[14] *Id*.

-12-

58.     Further, Renovate America and Renew Financial have program requirements that state that all contractors must: be registered with the HERO or CalFIRST program, must be licensed by the State of California, be in good standing with the Contractors State Licensing Board, agree to pull permits as required by the local building department for the installation of the home improvements, and only install products for which the contractor has the correct contract license.

59.     On information and belief, WRCOG, Renovate America, Renew Financial, and CSCDA have codes of conduct for their respective registered contractors to follow that include, among other things:

- Conducting business on a legal and respectful basis;
- Seeking signature on a completion certificate only after completion of the project to the client's satisfaction;
- Charging only reasonable, market-based prices within industry price guidelines;
- Treater elders as a protected class to protect them from and against any exercise of undue influence;
- Confirm with elderly homeowners via a live telephone call that they understand the financing terms and the products eligible for financing
- Supervise contractors to ensure compliance with code of conduct/consumer protection policies
- Obtaining all legally required building permits and following through in obtaining sign off or approval from any authority with jurisdiction over any project;
- Complying with all federal, state and local laws, ordinances, rules and regulations;
- Act in good faith to promptly resolve any complaint or grievance; and,
- Complying with all relevant provisions of the California Business and Professions Code.

-13-

60.    In reality, these codes of conduct are illusory at best and violations go unenforced.

61.    On information and belief, WRCOG, CSCDA did not adequately supervise and enforce these provisions in their respective contract with their servicers, Renovate America and Renew Financial.

62.    On information and belief, Renovate America and Renew Financial did not adequately supervise and/or enforce the contractor's program requirements in the Mr. Unser's transactions.

63.    The chart below highlights the discrepancies between the codes of conduct and the reality confronting Mr. Unser:

| Code of Conduct | Contractor's Conduct: Reality |
|---|---|
| Supervise Contractors | • Failed to ensure that contractors were providing accurate information about financing terms associated with PACE loans<br>• Failed to ensure that contractors actually performed the agreed upon work before releasing funds |
| Charging only reasonable, market-based prices within industry price guidelines. | • Charged prices significantly above fair market value. |
| Protecting elders from and against any exercise of undue influence. | • Isolated 73 year old, disabled man with readily evident cognitive impairments.<br>• Failing to confirm via a live telephone call that Mr. Unser understood the contract.<br>• Created a false email address on Mr. Unser's behalf in order to obtain falsified DocuSign signatures on financing agreements |
| Complying with all federal, state and local laws, ordinances, rules and regulations. | • Violated the federal Door-to-Door regulations un the FTC Act;<br>• Violated the California Home Solicitation Act, by, *inter alia*, failing to comply with requirements of the Unruh Act and the federal Truth in Lending Act and Regulation Z;<br>• Violated the Consumers Legal Remedies Act;<br>• Violated the contractor regulations in the California Business and Professions Code; and,<br>• Violated the Unfair Competition Law. |
| Complying with all relevant | • Violated California Business and |

-14-

COMPLAINT

| provisions of the California Business and Professions Code. | Professions Code section 7159(c)(1) because the alleged contract, addendums, and change orders are illegible;<br>• Violated California Business and Professions Code section 7159(c)(3)(B) for failure to provide the notice of cancellation, on the first page of the contracts, in the format required with the address information for where to send the notice;<br>• Violated California Business and Professions Code section 7159(c)(5) by failing to obtain signatures on change orders prior to commencing work in the change order;<br>• Violated California Business and Professions Code section 7159(d)(7) by failing to describe properly the significant materials to be used and the equipment to be installed;<br>• Violated California Business and Professions Code section 7159(d)(8)(A) by failing to properly disclose the down payment;<br>• Violated California Business and Professions Code section 7159(d)(8)(C) regarding down payments;<br>• Violated California Business and Professions Code section 7159(d)(10) for failing to state as required the approximate start date for the work; and,<br>• Violated California Business and Professions Code section 7159.1 by failing to include the notice that the home is being put up as a security. |

64.     Here, Defendants failed to maintain and enforce quality and anti-fraud measures.

### *Lack of Consumer Protections:  Fake Fair Market Value Limits*

65.     Renovate America represents on its website and in its press releases that HERO home improvement project prices cannot exceed the fair market value.

66.     Renovate America's website also states that there are fair pricing standards.

67.     However, on information and belief, WRCOG and Renovate America lacked any real fair market price evaluation, review, and/or standard in Mr. Unser's case.

68.     On information and belief, the amounts charged by Defendants exceeded the fair market value for the goods and services.

### *Lack of Consumer Protections:  Failure to Provide Proper and Adequate Consumer Education*

69.     Finally, WRCOG, Renovate America, CSCDA, and Renew Financial failed to require and provide adequate and accurate consumer education as recommended by the 2016 Department of Energy guidelines.

70.     Consumer education about this complicated, novel consumer finance tool is imperative.  The guidelines themselves highlight the novelty of this program and the potential lack of understanding regarding the financing through property tax assessments. "As such, it is essential that programs educate potential participants on how the PACE model works, whether it is a property owner's most appropriate financing mechanism, and the opportunities and risks PACE program participation creates for property owners."[15]

71.     The guidelines stress that the PACE program clearly explain and provide disclosures of the following:

- How PACE financing works;
- Basic information on other financing options available to property owners for financing energy efficiency and renewable energy investment and how PACE compares;
- All program fees and how participants will pay for them;

---

[15] *See* United States Department of Energy's "Best Practice Guidelines for Residential PACE Financing Program," p. 11, https://energy.gov/sites/prod/files/2016/11/f34/best-practice-guidelines-RPACE.pdf.

- Effective interest rate including all program fees, consistent with the Good Faith Estimate (GFE) of the Real Estate Settlement Procedure Act (RESPA) and the early and final disclosure of the Truth in Lending Act (TILA);
- PACE assessment impact on escrow payments (if applicable);
- Risk that assessment default may trigger foreclosure and property loss;
- Information on transferring the assessment at time of sale; and,
- Options for and implications of including tax credits in the financed amount.

72.  WRCOG, Renovate America, CSCDA, and Renew Financial did not provide this consumer education to Mr. Unser.

### *Creating the New Housing Crisis*

73.  The lack of consumer protections and the lack of enforcement of the scant protections that exists land consumers with home improvement financing they cannot afford to repay.

74.  The painful conclusion for homeowners is that foreclosure as a form of repayment is part of Defendants' original calculus.

75.  For Mr. Unser, an elderly homeowner on a fixed income, foreclosure is the *likely* form of repayment.  He is facing imminent foreclosure as the reverse mortgage lender will lender-place (also known as forced-place) the taxes, and when Mr. Unser cannot pay the property tax assessment, will foreclose.

76.  Foreclosure is tacitly a part of the repayment plan.

### *Relationship Between PACE Lenders and Contractors*

77.  Defendants Renovate America and Renew Financial use a network of thousands of contractors to facilitate homeowners entering into PACE loans.

78.     These contractors act as de facto mortgage brokers and are the primary and, in many cases, the only point of contact between the homeowner and Renovate America or Renew Financial.

79.     Renovate America and Renew Financial provide little to no training or supervision to the contractors that they register to distribute their product. While both websites offer "tools and training" to help get customers, no mention is made of any training on characteristics and pitfalls of PACE loans.  The contractor's primary incentive is to register as many homeowners for PACE loans.  On information and belief this incentive stems from benefits offered by Renovate America and Renew Financial, including but not limited to, referral fees and PACE loan funding advances before completion of the projects.[16]  This in turn results in self-interested contractors acting as mortgage brokers and engaging unregulated lending.

80.     Here, Quality Home intentionally misrepresented the characteristics of the PACE loans offered by Renovate America and Renew Financial in order to induce Mr. Unser to enter into a PACE loan.  Quality Home told Mr. Unser, in writing, that the loans will not increase the property taxes of homeowner and that the U.S. Government pays for 30 percent of the solar system.

81.     These misrepresentations are further propagated by false statements on both Renovate America and Renew Financial's websites.  Renew Financial's website states that the remaining balance of a PACE loan can be transferred to a buyer if you sell your home.  This is inaccurate and misleading.

82.     Contractors are required to comply with the consumer protection policies of CSCDA and WRCOG.

83.     The WRCOG Consumer Protection Policies prohibit contractors from: (i) suggesting or implying in any way that PACE is a government assistance

---

[16] *See*  https://www.renovateamerica.com/contractors/project-advance

-18-

program, (ii) suggesting or implying that PACE is a free program, (iii) suggesting or implying that PACE does not involve a financial obligation that the property owner must repay, (iv) using check facsimiles to dramatize the amount of PACE Program financing that would be available or presenting a check facsimile as if a negotiable instrument.

84.     Further the WRCOG consumer protection policies prohibit contractors from providing a different price for a project financed by a PACE assessment than the contractor would provide if paid in cash by the property owner.

85.     The CSCDA Consumer Protection Policy prohibits a contractors from engaging in marketing practices that are unfair, abusive and misleading.

86.     The Federal Housing Finance Agency has stated that Fannie Mae and Freddie Mac, who account for roughly 50% of all home mortgages, would not approve a mortgage or refinance an existing mortgage if there was a PACE loan on the property. Defendant's own assessment agreements also state this. Likewise, Renovate America states that you can "enjoy industry-leading consumer safeguards" on its website, while they argue that all practical consumer protection regulations do not apply to them.

87.     Both Renovate America and Renew Financial fail to adequately supervise or monitor the contractor's actions as can be seen by the numerous misrepresentations of the PACE loans and their consequences.

88.     For all facts alleged herein, Renovate America was acting as an agent for WRCOG.

89.     For all facts alleged hererin, Renew Financial was acting as an agent for CSCDA.

90.     For all facts alleged herein regarding the HERO Loan, Quality Home was acting as an agent for Renovate America and WRCOG.

91.     For all facts alleged herein regarding the CaliforniaFIRST Loan, Quality Home was acting as an agent for Renew Financial and WRCOG.

-19-

*Mr. Unser's Transactions*

92.   Mr. Unser is 73 years old, disabled, and retired.  Mr. Unser's income is approximately $10,000.00 annually.  He obtains this income on a monthly basis through Social Security.

93.   Mr. Unser has lived in this home for 49 years.  His mother purchased the house in 1968, and Mr. Unser has lived there since.  He was previously employed as a landscaper and handyman doing whatever was necessary to make ends meet.

94.   Mr. Unser inherited the house from his mother in 2004.

95.   Mr. Unser entered into a reverse mortgage in June 2013 to be able to afford the property taxes and to make some necessary repairs to the roof.

96.   Mr. Unser is a cancer survivor with severe physical and cognitive limitations.  He has limited cognitive abilities and a limited understanding of mortgage financing, and even less understanding towards government programs intended to benefit mortgagees.

97.   In speaking to Mr. Unser it is readily apparent that he has limited cognitive ability.  Defendants knew or should have known that Mr. Unser lacked comprehension of the transactions into which he was entering and lacked the ability to recall and retain information provided.

98.   Mr. Unser does not own a computer and does not have an email address.

99.   Mr. Unser has been a repeat target for Defendants.

100.   Since 2014, Defendants and other PACE providers have churned Mr. Unser into four successive home improvement contracts and loans, each loan coming with its own PACE lien on his property.  The total cost of these home improvement loans exceeds $144,000.000.

101.   Mr. Unser's annual property tax assessment has ballooned.  For 2012 to 2013, he paid $299.62 for his property taxes.  The following year, for 2013 to

1  2014 he paid $324.26.  Then, after the first PACE property tax assessment hits, it
2  jumped to $3,264.08 in 2015 to 2016.  Now, the total PACE property tax
3  assessment is over $18,000.00 a year.

4      102.  His annual property tax assessment of $18,000.00 exceeds his yearly
5  income of around $10,000.00.

6  ***First Transaction***

7      103.  On information and belief, Quality Home knocked on Mr. Unser's
8  door uninvited.  In a door-to door sales transaction, Quality Home's sales agent,
9  Siamak Khaligh, convinced Mr. Unser to purchase new windows.

10      104.  Mr. Unser entered into with Defendant Quality Home Renovators, on
11  or around April 24, 2014, at his home.  A true and correct copy of the Quality
12  Home's Home Improvement Agreement, dated April 24, 2014 ("First Agreement"),
13  is attached hereto as Exhibit A.

14      105.  This home improvement contract was to replace four windows for the
15  contract price of $2,554.00.

16      106.  The First Agreement further detailed that this would be a cash not
17  credit transaction.

18      107.  The First Agreement included an unlawful charge for a down payment
19  exceeding $1,000.00.  The First Agreement includes a down payment of $1,054.00.

20      108.  The down payment and payment schedule is further detailed in the
21  "Contract Addendum Change Order," dated April 24, 2014.  The down payment
22  consisted of one post-dated check of $254.00, which was written on or around April
23  24, 2014 and post-dated to June 3, 2014.  The other half of the down payment was
24  to be made at the time of the measure, on or around June 3, 2014.

25      109.  Mr. Unser made the first payment of $254.00.

26      110.  On or around June 25, 2014, Quality Home had Mr. Unser sign a
27  second, "Contract Addendum Change Order."  This altered the payment schedule

28

-21-

from the additional down payment of $800.00 plus a final payment of $1,500.00, to $2,300.00 paid off in monthly increments of $200.00.

### *Loan Churning*

111.   Shortly after signing the second change order, on information and belief, Quality Home, WRCOG, and Renovate America churned Mr. Unser into another loan.

112.   On information and belief, Quality Home rolled the payments owed from the First Agreement into another home improvement agreement, on or around July 2014 ("Second Home Improvement Agreement").  Quality Home never provided Mr. Unser a copy of the Second Home Improvement Agreement to Mr. Unser.

113.   On information and belief, the Second Home Improvement Agreement, included the four prior windows and added three more new windows, for a total of seven windows, a new door, and something called a "cool roof."

114.   Quality Home never provided Mr. Unser with any documents related to the Second Home Improvement Agreement.

115.   He was never provided with written or oral notice of his right to cancel these additional home improvements.

116.   Mr. Unser remains ignorant of the terms and conditions of any alleged Second Home Improvement Agreement.

117.   To finance the transaction, Quality Home, acting as the sales agent for WRCOG and Renovate America, negotiated a loan on his home for the additional repairs through Renovate America's signature HERO program, a PACE loan.

118.   The terms of the loan provided for a priority lien on the home for WRCOG.  A copy of the California HERO Program Assessment Contract, dated July 16, 2014 ("HERO Loan") is attached hereto as Exhibit B.

119.   The terms of the HERO Loan fail to include the amount to be paid to Quality Home, fail to include a credit for the down payment, and fail to include the total of payments.

120.   Further, the payment terms were hidden in exhibit B of the HERO Loan.  The financing terms that do exist, never appear above the signature line.

121.   On information and belief, Defendants created a false email for Mr. Unser and emailed the financing agreement to the fake email agreement.

122.   Mr. Unser does not recall signing the HERO Loan.

123.   Defendants did not provide Mr. Unser with a copy of the HERO Loan.

124.   The HERO Loan indicates that the maximum disbursement amount is $26,896.06.  The annual percentage rate is listed as 10.48 percent.

125.   The annual assessments for the HERO Loan are $2,933.53.

126.   The HERO Loan annual assessment raised his prior property tax bill from around $300.00 to over $3,000.00.

127.   If Mr. Unser had known the true cost of the improvements and the loan, he would not have agreed to enter into the transactions.

128.   The HERO Loan contains unconscionable terms, including:

- Section 3, subsection d improperly denies reduction, offset, or credit of any kind in the event the bond is refunded or for any other reason;

- Section 9 improperly waives all of Mr. Unser's right to file a lawsuit to challenge the assessment or any aspect of the proceedings of the Authority undertaken in connection with the HERO program;

- Section 9 also forces Mr. Unser to pay for the improvements regardless of whether they are properly installed, operated, or maintained;

- Section 9 additionally has Mr. Unser waive all rights to recover for damages arising from the assessment contract,

- Section 9 contains a Civil Code section 1542 general release;

-23-

- Section 10 requires Mr. Unser to "indemnify, defend, protect, and hold harmless" Cross-Defendants WRCOG and Renovate America "from any and all losses, liabilities, claims, damages (including consequential damages), penalties, fines, forfeitures, costs, and expenses (including out-of-pocket litigation costs and reasonable attorney's fees) and any demands of any nature whatsoever related directly or indirectly to , or arising out of or in connection with (i) the Property Owner's participation in the HERO program, (ii) the Assessment, (iii) the Improvements, or (iv) any other fact, circumstance or event related to the subject matter of this Contract, regardless of whether such losses, liabilities, claims, damages (including consequential damages), penalties, fines, forfeitures, costs and expenses (including all reasonable out-of-pocket litigation costs and reasonable attorney's fees) accrue before or after the date of this Contract."

129.   The HERO Loan does not contain the notice of cancellation directly above the signature line on the contract.  On information and belief, Mr. Unser was not orally informed of the three day right to cancel.

130.   The HERO Loan does not provide the disclosures and notices enumerated under the federal Truth in Lending Act and Regulation Z.

131.   WRCOG and Renovate America failed to accurately and clearly disclose:

- The annual percentage rate in the manner proscribed by the statute. The annual percentage rate is not included in the actual contract, but is in the text of an exhibit to the contract.  It is not set apart and made more distinct from other disclosures, is not on the first page, and, on information and belief, is inaccurate and misleading.
- The itemization of the amount financed is absent.
- The amount financed is not stated.

-24-

- The finance charge is not separately stated and set apart.
- Further, the finance charge includes fails to disclose hidden finance charges.  For example, the contract is based on a simple interest calculation, but, on information and belief, WRCOG charges interest on the interest accruing before the first payment.
- On information and belief, the total of payments is missing.
- The total sale price is likewise absent.
- The down payment of $254.00 is not disclosed or included in the total sale price.
- The following notice is missing, "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan."
- The amount borrowed is off by more than $100.00.

132.   Mr. Unser had previously taken out a reverse mortgage to help him cover the original $300.00 annual property tax assessment.  There was no way he could cover the jump in assessment.

133.   WRCOG recorded the lien, on or around August 25, 2014.  After adding the assessments in the exhibit to the lien, the total of payments comes to $58,670.60.

134.   As a direct and proximate result of Defendants' actions, Mr. Unser has suffered damages, including monetary damages.

### *Reverse Mortgage Lender Initiates Non-Judicial Foreclosure*

135.   When Mr. Unser received the 2015 to 2016 property tax bill, which included the HERO Loan property tax assessment, he could not afford to pay it.

COMPLAINT

136.   On or around April 21, 2016, his reverse mortgage servicer, Reverse Mortgage Solutions paid his property tax bill.

137.   Reverse Mortgage Solutions demanded payment from Mr. Unser.

138.   Mr. Unser still did not have the funds to pay Reverse Mortgage Solutions.  He made a partial payment of around half what was owed, but he could not pay the remainder.

139.   Reverse Mortgage Solutions initiated non-foreclosure proceedings on Mr. Unser's property based on the property tax bill it paid.

140.   Reverse Mortgage Solutions recorded a Notice of Default, on or around April 21, 2016.  The amount declared due was $2,714.36.

141.   Mr. Unser was forced to scrape together the funds to pay the remainder of the assessment that Reverse Mortgage Solutions paid on his behalf, but this left him with no savings.

142.   On information and belief, the Notice of Default was rescinded in June 2016.

143.   This experience caused him monetary harm and extreme emotional distress.

### *Quality Home Returns Again at Mr. Unser's Door*

144.   On or around March 16, 2015, Quality Home returned again, unsolicited to Mr. Unser's home.

145.   Quality Home sale's agent, Manuel Perez, represented that the new proposed solar energy would save Mr. Unser money, would increase his property value, and stated that the financing would ***not*** be paid through property taxes.

146.   Mr. Perez provided Mr. Unser with a flyer, titled "Things to Remember about the benefits of Solar."  Among other things, the flyer reads, "The U.S. Government pays for 30% of the system."  It also states, "Investing in Solar DOES NOT increase your property taxes."  A true and correct copy of Quality Home's Solar Flyer is attached hereto as Exhibit C.

147.   These representations were misleading and inaccurate.

148.   The proposed solar energy would not save Mr. Unser money.  It would actually increase the amount he was spending monthly.  His, then-current bills were around $50.00.  (This is noted in the Solar Photovoltaic Addendum.)

149.   There is no support that the solar power would increase his property value.

150.   The U.S. Government does not pay for 30 percent of the program.  Rather, there is a 30 percent federal tax credit.  As Mr. Unser has no tax liability, he will receive no benefit from a tax credit.  Quality Home told him the government would pay 30 percent.  It did not explain that this was a tax credit available for which he did not qualify.

151.   The solar system is paid through property taxes.

152.   Quality Home intended for Mr. Unser to rely on these misrepresentations.

153.   Quality Home knew that the representations were false at the time they were made.

154.   Quality Home made these false representations to Mr. Unser intentionally to deceive him and to induce him in to entering in to a home improvement contract that Defendants knew he could not afford.

***Third Home Improvement Agreement***

155.   Reasonably relying on Quality Home's representations, Mr. Unser agreed to enter into another Home Improvement Agreement, dated March 16, 2015 for solar panels.  A true and correct copy of Quality Home's Home Improvement Agreement, dated March 16, 2015 and the related addendums notices ("Third Home Improvement Agreement") is attached hereto as Exhibit D.

156.   The Third Home Agreement provided for 10 solar panels to be installed, for a total price of $20,721.00.

157.   On information and belief, this price far exceeds fair market value.

-27-

158.   The Third Home Agreement fails to provide a three-day notice of cancellation immediately above the signature line.

159.   Quality Home again served as the sales agent for the PACE lender, in this instance, CSCDA and Renew Financial.

160.   The Agreement to Pay Assessment and Finance Improvements, dated March 17, 2015 ("Agreement to Pay Assessments"), is between CSCDA and Mr. Unser.   This Agreement is attached as Exhibit E.

161.   Mr. Unser does not recall signing the Agreement to Pay Assessments.

162.   Exhibits A and B to the Agreement to Pay Assessments indicate that the CSCDA will finance 10 solar panels and five solar inverters for $20,721.00.

163.   No copy of the Agreement to Pay Assessments was provided to Mr. Unser.

164.   The Agreement to Pay Assessments adds an additional $3,648.19 made up of program-related fees, a lien recording fee, a reserve fund deposit, a foreclosure expense reverse account deposit, and capitalized interest.  These charges represent 5.7 percent of the loan.

165.   The total assessment amount is listed as $24,369.19.

166.   The property tax assessments were $2,553.00 per year, for a grand total assessment obligation of $51,077.20.

167.   The Agreement to Pay Assessments contains unconscionable terms, including:

- Section 3, subsection (e), subsection f improperly denies reduction, offset, or credit of any kind in the event the bond is refunded or for any other reason;
- Section 9 improperly waives all of the Mr. Unser's right to file a lawsuit to challenge the assessment or any aspect of the proceedings of the Authority undertaken in connection with the CaliforniaFirst program;

-28-

- Section 9 also forces the Mr. Unser to pay for the improvements regardless of whether they are properly installed, operated, or maintained;

- Section 9 additionally has the Mr. Unser waive all rights to recover for damages arising from the assessment contract,

- Section 9 contains a Civil Code section 1542 general release;

- Section 10 requires Mr. Unser to "indemnify, defend, protect, and hold harmless" CSCDA, Renew Financial, the City and county, any bond purchaser, any of CSCDA's agents, employees, attorneys, representatives, successors, and assigns, "from any and all losses, liabilities, claims, damages (including consequential damages), penalties, fines, forfeitures, costs, and expenses (including out-of-pocket litigation costs and reasonable attorney's fees) and any demands of any nature whatsoever related directly or indirectly to , or arising out of or in connection with (i) the Property Owner's participation in the CaliforniaFirst program, (ii) the Assessment, (iii) the Improvements, or (iv) any other fact, circumstance or event related to the subject matter of this Contract, regardless of whether such losses, liabilities, claims, damages (including consequential damages), penalties, fines, forfeitures, costs and expenses (including all reasonable out-of-pocket litigation costs and reasonable attorney's fees) accrue before or after the date of this Contract."

168.   The Agreement to Pay Assessments does not contain the notice of cancellation directly above the signature line on the contract.  It is hidden on page 9 of 18 pages and is not in the prescribed format.  It is under a heading which has nothing to do with a notice regarding cancellation rights.

169.   On information and belief, Mr. Unser was not orally informed of the three-day right to cancel.

COMPLAINT

170.   The Agreement to Pay Assessments does not provide the disclosures and notices enumerated under the federal Truth in Lending Act and Regulation Z.

171.   CSDCA and Renew Financial failed to accurately and clearly disclose:

- The annual percentage rate in the manner proscribed by the statute. The annual percentage rate is not included in the actual contract, but is in the text of an exhibit to the contract.  It is not set apart and made more distinct from other disclosures, is not on the first page, and, on information and belief, is inaccurate and misleading.
- The itemization of the amount financed is absent.
- The amount financed is not stated.
- The finance charge is not separately stated and set apart.
- The following notice is missing, "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home.  You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan."

172.   The financing agreement allegedly signed by Mr. Unser to pay for the solar panels contains only electronic signatures.

173.   As stated above Mr. Unser does not have a computer or an email account.

174.   On information and belief, Defendants created a false email for Mr. Unser and emailed the financing agreement to the fake email account.

175.   On information and belief, Mr. Unser does not remember signing the financing agreement or agreeing to the financing terms in the financing agreement.

176.   None of the Defendants confirmed via a live telephone call with Mr. Unser that he understood the financing agreements he allegedly entered in to.

177.   Defendants' actions described herein are willful and knowing.

178.   Defendants intentionally took advantage of Mr. Unser to make a profit, knowing he had no way to repay the debt he allegedly incurred for the solar panels.

### *Cease and Desist and Notice of Cancellation*

179.   Mr. Unser sent a notice of cancellation and a cease and desist letter to Defendants CSCDA, Renew Financial, and Quality Home, pursuant to California Civil Code section 1782, on or around August 3, 2017 via certified mail, return receipt requested.

180.   Mr. Unser made the materials available for 20 days.  Defendants did not come to pick up the materials.

181.   Defendants CSCDA, Renew Financial, and Quality Home did not correct any of the violations detailed in the letter.

182.   Mr. Unser hereby cancels the Second Home Improvement Agreement with Quality Home and the HERO Loan, pursuant to his rights under the Home Solicitation and seeks equitable rescission under the FTC Act.  Mr. Unser agrees to make the windows and door available for repossession for 20 days from the date of Defendants' receipt of this Complaint.

183.   Mr. Unser further demands, pursuant to California Civil Code section 1782, that Defendants Renovate America, WRCOG, and Quality Home cease and desist from the unfair and deceptive actions detailed herein within 30 days of receipt of this Complaint.  He also demands that Defendants WRCOG, Renovate America, and Quality Home correct, repair, replace, and rectify the violations of Civil Code section 1770 alleged herein within 30 days of receipt of this Complaint.

### *Damages*

184.   Mr. Unser has suffered damages, including injury in fact and money damages, as a direct and proximate result of Defendants' actions.

185.   These damages include, but are not limited to, loss of equity in his home and costs associated with this lawsuit.

### **FIRST CAUSE OF ACTION**

-31-

***Violations of Federal Door-To-Door Sales Act, 16 CFR sections 429, et seq.,***

***Against All Defendants Except Reverse Mortgage Solutions and Bond Company***

186.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 186 in the Complaint.

187.   The Title 16 of the Code of Federal Regulations section 429.1 states that it is an unfair and deceptive act for a seller or his or her representative to do any of the following in connection with a door-to-door sale:

- Fail to provide the buyer with a complete receipt or copy of the contract;
- Fail to have printed in the immediate proximity of the space reserved for the buyer's signature a notice in bold face font size 10 or higher a statement in substantially the following form: "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right";
- Fail to properly provide two copies of the notice of cancellation with the seller's address at which a cancellation notice could be sent, the date the contract was signed, and the last business day by which the buyer may give notice of cancellation;
- Fail to orally inform buyer, at the time the buyer signs the contract, of the buyer's right to cancel; or,
- Misrepresent in any manner the buyer's right to cancel.

188.   Section 429.0 defines a door-to-door sale as:

- The sale, lease, or rental of consumer goods or services in which the seller or his representative personally solicits the sale;
- The value of a good or service must be worth more than $25.00; and,
- The sale must take place at a location other than the seller's place of business.

COMPLAINT

189.   Mr. Unser seeks equitable rescission of Second Home Improvement Agreement, the HERO Loan, the Third Home Improvement Agreement, and the Agreement to Pay Assessments for failure to provide the prescribed three-day notice of right to cancel.

190.   On information and belief, the Second and Third Home Improvement Agreements entered into between Mr. Unser and Defendant Quality Home Renovators fall within the scope of this section.

191.   Both home improvement contracts entered into between Mr. Unser and Defendant Quality Home Renovators were for the sale of goods or services over $25.00.

192.   In both home improvement contracts, Defendant Quality Home Renovators sought out Mr. Unser to solicit the sale of goods and services, as opposed to him initiating contact to solicit the home improvements.

193.   Both home improvement contracts were negotiated and signed at Mr. Unser's home.

194.   Quality Home failed to properly comply with notice of cancellation sections of the FTC regulation rule.

195.   Quality Home never provided Mr. Unser with a copy of the alleged Second Home Improvement Contract, did not provide him with notice of his three-day right to cancel the agreement in the proscribed manner in the alleged agreement, and failed to provide the separate notices of cancellation, as well.

196.   Quality Home failed to provide in the Third Home Improvement Agreement notice of the three day right to cancel by midnight of the third business day, in bold, next to Mr. Unser signature.

197.   Additionally, Defendant Quality Home failed to properly comply with the multiple sections of the FTC regulation rule in the Second Home Improvement contract entered into on or around March 16, 2015.

198.   Mr. Unser seeks equitable rescission pursuant to the FTC Act.

199.   Defendants Renovate America and Renew Financial violated the FTC regulation rule when they entered into the alleged assessment contracts with Mr. Unser.

200.   On information and belief as stated above, Renovate America and Renew Financial do not have in-house sales staff.  On information and belief, Defendants Renovate America and Renew Financial trained and supervised Defendant Quality Home to act as door-to-door sales agents and representatives to peddle Renovate America's HERO program and Renew Financial's CaliforniaFirst program.  The programs provide home improvement services, like contractor training, supervision, contractor dispute resolution services, fair market price guarantees, and financing.

201.   Quality Home was the sales agent and representative for Renovate America's and Renew Financial's home improvement services.

202.   Renovate America violated sections of the FTC regulation rule when it entered into the assessment agreement that Mr. Unser allegedly signed.

203.   Defendant Renovate America violated the FTC section requiring that the buyer must receive a "fully completed receipt or copy of any contract."

204.   Mr. Unser did not receive a copy of the agreement.

205.   Additionally, Defendant Renovate America violated the FTC regulation rule requiring a bold font, three-day notice of cancellation in immediate proximity to Mr. Unser's signature.

206.   By failing to comply with multiple sections of the FTC regulation rule Defendant Renovate America committed unfair and deceptive acts or practices when entering into the assessment agreement with Mr. Unser.

207.   Renew Financial violated sections of the FTC regulation rule when it entered into the assessment agreement that Mr. Unser allegedly signed.

208.   Defendant Renew Financial violated the FTC section requiring that the buyer must receive a "fully completed receipt or copy of any contract."

-34-

209.   Mr. Unser did not receive a copy of the Agreement to Pay Assessments.

210.   Additionally, Defendant Renew Financial violated the FTC regulation rules requiring a bold font, three-day notice of cancellation near Mr. Unser's signature.

211.   By failing to comply with multiple sections of the FTC regulation rule Defendant Renew Financial committed unfair and deceptive acts or practices when entering into the assessment agreement with Mr. Unser.

212.   As Defendants Quality Home Renovators, WRCOG, Renovate America, CSCDA and Renew Financial violated the FTC regulation rule regarding the notice of three day right of cancellation in door-to-door sales, Mr. Unser is entitled to equitable rescission of all four contracts.

213.   Mr. Unser seeks equitable rescission of all four agreements.

### SECOND CAUSE OF ACTION

***Violations of the Home Solicitation Act, California Civil Code Sections 1689, et seq. Against All Defendants Except Defendant Reverse Mortgage Solutions, Inc. and Bond Company***

214.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 214 in the Complaint.

215.   The contracts with Defendants were for the sale of goods and services exceeding $25.00.

216.   The goods and services were for home improvement repairs on Mr. Unser's home.  The specific goods and services are detailed in the assessment agreements and in the contractors' agreements.

217.   The contracts provided for a liens on Mr. Unser's property.

218.   Defendants have violated the Home Solicitation Act.

219.   Defendants WRCOG and Renovate America have violated the Home Solicitation Act, Civil Code section 1689.7 by failing to include the required notice

of cancellation in the assessment contract. Nowhere in the assessment contract is there any mention of Mr. Unser's right to cancel the contract within three business days of signing it.

220. Defendants CSCDA and Renew Financial have violated the Home Solicitation Act, Civil Code section 1689.7 by failing to include in the assessment agreements the notice of cancellation as required. The notice of cancellation appears in the assessment agreement as a single sentence, hidden on page 9. There is no notice near Mr. Unser's alleged signature on page 10. Additionally, the one sentence notice of cancellation in the assessment contract lacks the statutorily required language informing the buyer of the available methods to cancel the contract as well as what the buyer would need to provide in order to cancel the contract. Lastly, the provided notice to cancel does not include the statutorily required regarding the time frame in which the contractor must return money paid to them, and the buyer obligations in regards to materials left from the project.

221. As such, Mr. Unser hereby exercises his right to cancel the assessment agreements, pursuant to Civil Code section 1689.7(g).

222. Defendants WRCOG, Renovate America, CSCDA, and Renew Financial violated California Civil Code section 1689.8. Defendants violated Civil Code section 1689.8(a) by violating the Unruh Act, Civil Code sections 1801, *et seq.*, which is Chapter 1 (commencing with Section 1801) of Title 2 of Part 4 of Division 3.

223. The violations of the Unruh Act include:
- Violating section 1803.3(b) by violating the federal Truth in Lending Act and Regulation Z as detailed more fully below;
- Violating section 1803.7 by failing to provide a copy of the contract during the contract negotiation;
- Violating section 1804.1 for including unconscionable provisions in the assessment agreements, including the waiver of the rights to assert

-36-

claims arising out of the action, waiver of the right to pursue an action for illegal acts, waiver of Mr. Unser's ability to pursue legal remedies under the assessment agreements, and obtaining a security interest in the buyer's real property where the buyer is older than 65 years old;

- Violating section 1805.1 by charging an annual fee on each of the assessment agreements; and,
- Violating 1805.7 by charging compound interest—Defendants charge interest on the interest accrued prior to the first payment.

224.  The unconscionable provisions in the assessment agreements are void, pursuant to California Civil Code section 1804.4.

225.  Defendants WRCOG, Renovate America, CSCDA, and Renew Financial's violations of the Unruh Act are wilful and are in the assessment agreements.  On information and belief, these assessment agreements are form agreements used in numerous transactions.  On information and belief, Defendants have a pattern and practice of failing to inform consumers of the three day right to cancel.

226.  On information and belief, Defendants WRCOG, Renovate America, CSCDA, and Renew Financial have violated the Regulation Z by, among other, the following acts:

- Defendants have violated Title 12 of the Code of Federal Regulations section 226.17(a)(1) by failing to make the required disclosures clearly and conspicuously;
- On information and belief, Defendants have violated Title 12 of the Code of Federal Regulations section (c)(1) by failing to accurately disclose the terms of the legal obligations between Mr. Unser and Defendants;

COMPLAINT

- Defendants have violated Regulation Z, Title 12 of the Code of Federal Regulations section 226.18(b) because they failed to accurately disclose the amount financed;

- Defendants have violated Regulation Z, Title 12 of the Code of Federal Regulations section 226.18(c), because they failed to properly itemize the amount financed;

- Defendants have violated Regulation Z, Title 12 of the Code of Federal Regulations section 226.18(d), because they failed to properly disclose the finance charge;

- Defendants have violated Regulation Z, Title 12 of the Code of Federal Regulations section 226.18(e), because they failed to properly disclose the annual percentage rate;

- Defendants have violated Regulation Z, Title 12 of the Code of Federal Regulations section 226.18(j), because they failed to properly list the total sale price; and,

- Defendants have violated Regulation Z, Title 12 of the Code of Federal Regulations section 226.32(c) by failing to include the following notice: "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan;" and,

- Defendants have violated Regulation Z, Title 12 of the Code of Federal Regulations section 226.32 because the amount borrowed is off by more than $100.00.

227.    Defendants have violated the Home Solicitation Act, Civil Code section 1689.7(a)(4) by failing to include in the notice of cancellation as required.

The notice does not contain the language required by the statute, is not in 12 point font, and is not immediately above the signature line.

228.   On information and belief, Defendants committed these violations willfully and knowingly.  Defendants meet the definition of willful as set forth in Civil Code section 1812.9.

229.   Defendants have failed to correct the inaccurate and unlawful disclosures.

230.   Mr. Unser hereby cancels Defendants WRCOG, Renovate America, CSCDA, and Renew Financial assessment agreements and the alleged contracts with Defendant Quality Home Renovators.

231.   Mr. Unser agrees to make the goods available for repossession for 20 days from the date of receipt of this Complaint.

232.   Mr. Unser has suffered damages as a direct and proximate result of Defendants' actions, including, but not limited to, loss of equity and costs associated with this case.

### THIRD CAUSE OF ACTION

***Intentional Misrepresentation or, in the Alternative, Negligent Misrepresentation Against All Defendants Except Defendant Reverse Mortgage Solutions, Inc. and Bond Company***

233.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 233 in the Complaint.

234.   Quality Home's agents made material false representations to Mr. Unser to induce him to enter into the Second and Third Home Improvement Agreements.

235.   Defendant Quality Home material false representations to induce the elderly Mr. Unser to agree to the home improvements, include:

- Quality Home represented that the U.S. Government would pay 30 percent of the cost;

- Quality Home lied and stated that the solar system would not be paid through taxes;
- Quality Home misrepresented the payment terms for the home improvement.

236.   Renovate America and Renew Financial falsely represented to Mr. Unser, through its sales agents at Quality Home, regarding the terms and pricing of the financing and misrepresented that the HERO program and CalFIRST program verify the contractors, approves products, ensures fair market value pricing, and inspects work to ensure everything is exceptionally high quality.

237.   On information and belief, these representations were inaccurate and misleading.

238.   On information and belief, Defendants knew or should have known that these representations were false and misleading at the time Defendants made them.

239.   Mr. Unser justifiably relied on these representations when agreeing to the home improvement projects.

240.   Mr. Unser would never have entered into any purported contract with Defendants had they known each or any of these representations were false.

241.   Mr. Unser has suffered damages as a direct and proximate result of Defendants' actions.

242.   Moreover, Defendants conduct toward Mr. Unser has been done with fraud, oppression, and malice.  Preying upon an elderly seventy-year-old man, providing materially false representations so that they could strip him of the only asset that he has, his home, for their own financial gain, and causing him to face an imminent foreclosure are bad acts performed by Defendants.

/////

## **FOURTH CAUSE OF ACTION**

**Negligence Against Defendants CSCDA, Renew Financial, WRCOG, Renovate America, and Quality Home**

**A. Negligence Against Defendants California Statewide Community Development Authority and Renew Financial**

243.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 243 of this Complaint.

244.   CSCDA administers multiple PACE programs with the intent of providing home improvement services and financing for energy efficiency, renewable energy, and water conservation retrofits on residential and commercial property.

245.   Renew Financial works with a contractor and CSCDA to help homeowners enter into PACE financing for the CaliforniaFIRST program.

246.   As an administrators and financers of the CaliforniaFIRST Program, both Renew Financial and CSCDA have duties to ensure the projects funded through the CaliforniaFIRST Program are compliant with the PACE loan program and the codes of conduct associated therewith.

247.   The CaliforniaFIRST program claims to adhere to the 2016 PACE Consumer Protection Policies.

248.   The CaliforniaFIRST program code of conduct and 2016 PACE Consumer Protections creates a duty of care for all administrators and financing companies working with consumers in relation to implementation of the CaliforniaFIRST program.

| Duty created by the PACE Consumer Protections and the CaliforniaFIRST Code of Conduct | CSCDA and Renew Financial breached their duty of care in Mr. Unser's case |
|---|---|
| Supervise contractors | • Failing to train contractors regarding the financing terms involved with PACE loans<br>• Allowing contractors to spread false information about PACE loans, indicating that the home improvements would not increase property taxes. |

-41-

| | |
|---|---|
| | • Did not ensure that the contractors actually performed the agreed upon work before releasing funds |
| Treat Mr. Unser as a member of a protected class | • As Mr. Unser is an elderly man, PACE consumer protection policies required the administrators of the program to confirm by live telephone with Mr. Unser that he understood the financing terms and the projects eligible for financing. This call never took place. |
| Conducting business on a legal and respectful basis. | • Financing loans through the PACE program on Mr. Unser which were unrelated to energy efficiency<br>• Creating a false email address in order to obtain falsified DouSign signatures on financing documents.<br>• Failed to review the home improvement contracts that were the basis of the PACE funding, which evidenced that the funding far exceeded the work performed on the property and the price agreed upon in the home improvement contracts. |
| Charging only reasonable, market-based prices within industry price guidelines. | • Administered and financed loans that charged prices significantly above fair market value. |
| Complying with all federal, state and local laws, ordinances, rules and regulations. | • Violate federal Truth in Lending Act and Regulation Z;<br>• Violate the California Home Solicitation Act;<br>• Violate the contractor  regulations in the Business and Professions Code; and,<br>• Violate the California Unfair Competition Law. |
| Act in good faith to promptly resolve any Complaint or grievance. | • Did not respond to the Notice of Cancellation/grievance letter sent in August 2017, yet continued to make attempts to collect the alleged debt associated with the financing agreement. |
| Complying with all relevant provisions of the California Business and Professions Code. | • Violated California Business and Professions Code section 7159(c)(3)(B) for failure to provide the notice of cancellation, on the first page of the contracts, in the format required with the address information for where to send the notice; and,<br>• Violated California Business and Professions Code section 7159.1 by failing to include the notice that the home is being put up as a security. |

/////

/////

/////

**B. Negligence Against Western Riverside Council of Governments and Renovate America**

249.   WRCOG administers multiple PACE programs with the intent of providing financing for energy efficiency, renewable energy, and water conservation retrofits on residential and commercial property.

250.   Renovate America works with a contractor and WRGOG to provide home improvement services and PACE financing through its HERO program.

251.   As administrators and financers of the HERO Program, both Renovate America and HERO have duties to ensure the projects funded through the HERO Program are compliant with the PACE loan program and the codes of conduct associated therewith.

252.   The HERO program claims to adhere to the 2016 PACE Consumer Protection Policies.

253.   The HERO program code of conduct and 2016 PACE Consumer Protections creates a duty of care for all administrators and financing companies working with consumers in relation to implementation of the HERO program.

| Duty created by the PACE Consumer Protections and the HERO Program's Code of Conduct | WRCOG and Renovate America breached their duty of care in Mr. Unser's case |
|---|---|
| Supervise contractors | • Failing to train contractors regarding the financing terms involved with PACE loans<br>• Allowing contractors to spread false information about PACE loans, indicating that the home improvements would not increase property taxes.<br>• Did not ensure that the contractors actually performed the agreed upon work before releasing funds |
| Fund **only** energy efficiency, water efficiency and renewable energy programs permanently affixed the property | • Allowing Quality Home to obtain perform improvements unrelated to energy efficiency |
| Treat Mr. Unser as a member of a protected class | • As Mr. Unser is an elderly man, PACE consumer protection policies required the administrators of the program to ensure that |

-43-

| | he understood all financing terms before finalizing any financing agreements. |
|---|---|
| Conducting business on a legal and respectful basis. | • Financing loans through the PACE program on Mr. Unser which were unrelated to energy efficiency<br>• Creating a false email address in order to obtain falsified DouSign signatures on financing documents. |
| Charging only reasonable, market-based prices within industry price guidelines. | • Administered and financed loans that charged prices significantly above fair market value.<br>• Failed to review the home improvement contracts that were the basis of the PACE funding, which evidenced that the funding far exceeded the work performed on the property and the price agreed upon in the home improvement contracts. |
| Complying with all federal, state and local laws, ordinances, rules and regulations. | • Violate federal Truth in Lending Act and Regulation Z;<br>• Violate the California Home Solicitation Act;<br>• Violate the contractor  regulations in the Business and Professions Code; and,<br>• Violate the California Unfair Competition Law. |
| Complying with all relevant provisions of the California Business and Professions Code. | • Violated California Business and Professions Code section 7159(c)(3)(B) for failure to provide the notice of cancellation, on the first page of the contracts, in the format required with the address information for where to send the notice; and,<br>• Violated California Business and Professions Code section 7159.1 by failing to include the notice that the home is being put up as a security. |

## C. Negligence Against Quality Home Renovators

254.   As a contractor associated with the HERO program, Quality Home had a duty to comply with the applicable provisions of both the WRCOG and CSCDA's consumer protection policies.

255.   Both the WRCOG and CSCDA Consumer Protection Policies prohibit contractors from: (i) suggesting or implying in any way that PACE is a government assistance program, (ii) suggesting or implying that PACE is a free program, (iii) suggesting or implying that PACE does not involve a financial obligation that the property owner must repay, (iv) using check facsimiles to dramatize the amount of PACE Program financing that would be available or presenting a check facsimile as if a negotiable instrument.

256. Quality Home made multiple representations to Mr. Unser that PACE was a free program, that it would not result in a financial obligation and that it would not raise his property taxes. Therefore, it breached its duty set forth in the WRCOG and CSCDA Consumer Protection Policies.

257. Further, on information and belief, the WRCOG and CSCDA consumer protection policies prohibit contractors from providing a different price for a project financed by a PACE assessment than the contractor would provide if paid in cash by the property owner.

258. Quality Home initially agreed to perform the agreed upon home improvements for $2,554.00 in cash, payable in monthly payments of $200.00, without interest.

259. For this amount, it agreed to replace four windows.

260. When Mr. Unser was not able to make those payments, it churned him into a loan financed through PACE and duped Mr. Unser into obtaining a loan for approximately $26,553.19 for the same repairs. The only added repairs were 3 additional window replacements, a door, and "cool roof."

261. Quality Home violated its duty of care to Mr. Unser by deceiving Mr. Unser in to entering into PACE financing for home improvements that far exceeded the amount they agreed to accept in cash for the same work.

262. The CSCDA and WRCOG Consumer Protection Policies prohibit a contractor from engaging in marketing practices that are unfair, abusive, and misleading.

263. By providing Mr. Unser with a written advertisement indicating that installation of solar panels would not raise his property taxes and that the program was partially funded by the government, Quality Home Renovators engaged in unfair, deceptive and misleading marketing tactics.

/////

/////

-45-

264.   These marketing tactics were in violation of the duty of care Quality Home Renovators owes to Mr. Unser as imposed by the WRCOG and CSCDA Consumer Protection Policies.

265.   Because of Defendants alleged negligent conduct, Mr. Unser unknowingly entered in to the two subject PACE loans, causing substantial and unaffordable increases to his property taxes.

266.   The PACE loans are liens on Mr. Unser's property, which negatively affect the equity in his home and put him at risk of imminent foreclosure.

267.   All of Defendants' alleged negligent conduct, directly and proximately caused damages to Mr. Unser. Mr. Unser demands the applicable relief set forth in the Prayer for Relief below.

## FIFTH CAUSE OF ACTION

***Violations of the Elder and Dependent Adult Civil Protection Act, California Welfare & Institutions Code Section 15600, et seq. Against All Defendants Except Defendant Reverse Mortgage Solutions, Inc. and Bond Company***

268.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 268 in the Complaint.

269.   The California legislature drafted the Elder and Dependent Adult Civil Protection Act to fulfill its responsibility to protect elders and dependent adults from abuse, neglect, or abandonment, a vulnerable segment of the population that is more subject to the risks associated with these abuses.  Abuse of an elder includes financial abuse.

270.    Mr. Unser is exactly the type of person that the Elder and Dependent Adult Civil Protection Act was designed to protect.

271.   Defendants' financial abuse of Mr. Unser is exactly the type of abuse the Act was designed to prevent.

272.   Mr. Unser at all times relevant to the events described herein, is an elder within the meaning of California Welfare & Institutions Code section 15610.27 in that he is residing in this state and is in his seventies.  His age and elderly status was known to Defendants.

273.   The acts and omissions of Defendants as above alleged constitute financial abuse of an elder within the purview and protections of the California Welfare & Institutions Code section 15610.30.

274.   Defendants violated California Welfare and Institutions Code section 15610.30 by:

- Taking, secreting, appropriating, obtaining, or retaining real and/or personal property of Mr. Unser for a wrongful purpose and/or with the intent to defraud.  Defendants intended to defraud Mr. Unser and obtained liens against him home.  Defendants stripped Mr. Unser of the equity in his house.

- Assisted in taking, secreting, appropriating, obtaining, or retaining real and/or personal property of Mr. Unser for a wrongful purpose and/or with the intent to defraud.  Defendants made false representations to Mr. Unser (indicating that his property taxes wouldn't increase and that the government was paying for a portion of the solar panels) intentionally to obtain and retain money from Mr. Unser and liens on his home.

- Taking, secreting, appropriating, obtaining, or retaining real and/or personal property of Mr. Unser by undue influence. These false representations made to Mr. Unser were the use of undue influence so that the Defendants could make a sale.

275.   Defendants acted with wrongful intent as they engaged in these actions when they knew or should have known that this conduct was likely to be harmful to Mr. Unser.

276.   Defendants took, secreted, appropriated, obtained, or retained real and personal property through the series of agreements detailed above.

277.   Defendants WRCOG, Renovate America, CSCDA, and Renew Financial contracted to obtain substantial fees and interest in property from Mr. Unser.

278.   Defendants' financial abuse is the proximate cause of Mr. Unser's suffering and damages, including mental suffering.  "Mental suffering" as used herein means fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts performed, or false and misleading statements made with malicious intent to cause such mental conditions in an elder adult.

279.   Defendants' actions have caused Mr. Unser to be in constant fear of both losing his home and his ability to pay his property taxes.

280.   At all times relevant herein, Defendants actually knew based on its own observations or should have known of the elderly status of Mr. Unser and his cognitive disabilities.

281.   Nonetheless, Defendants took undue advantage of Mr. Unser, an elderly individual with limited cognitive abilities.

282.   Defendants unduly pressured and made false representations to induce Mr. Unser to enter into the subject transactions despite the fact that he had limited capacity to understand the nature and scope of the rights and obligations therein, and was unable to protect his rights.

283.   Defendants engaged in excessive persuasion that caused Mr. Unser to act or refrain from acting by overcoming the free will of Mr. Unser and resulted in inequity.  For example, Defendants committed the following:

- Defendants initiated changes in the property rights affecting Mr. Unser's home by having him sign agreements;
- Further, Defendants created false email account; and,

-48-

1        • Failed to provide Mr. Unser with copies of the agreements.

2        284.   Mr. Unser was particularly vulnerable to Defendants' actions.  Mr.

3   Unser is in seventies and is largely confined to his home.  He has limited cognitive

4   ability and understanding of the contracts that he signed.

5        285.   With malice, oppression, fraud, and recklessness, Defendants moved

6   forward with the collecting money and imposing the liens of his home.

7        286.   As a direct and legal result of Defendants' violation of the Elder and

8   Dependent Adult Civil Protection Act in its dealings with Mr. Unser, he suffered

9   actual, consequential and incidental damages, including without limitation, mental

10  suffering and emotional distress.

11       287.   Mr. Unser continues to suffer damages, the precise amount of which is

12  unknown at the present time; the limitations of Code of Civil Procedure section

13  377.34 do not apply here.

14       288.   In addition to all other remedies provided by law, pursuant to terms of

15  Welfare & Institutions Code section 15675, Mr. Unser is entitled to attorneys' fees,

16  expenses and costs of suit incurred herein, and treble damages pursuant to Civil

17  Code section 3345, and all other forms of relief otherwise allowed by law,

18  including punitive damages.

19                          **SIXTH CAUSE OF ACTION**

20  ***Violations of Business and Professions Code Section 7160 Against Defendant***

21                              ***Quality Home***

22       289.   Mr. Unser realleges and incorporates by reference the allegations in

23  paragraphs 1 through 289 in the Complaint.

24       290.   Defendant Quality Home violated California Business and Professions

25  Code section 7160 by inducing Mr. Unser into entering the Second and Third Home

26  Improvement Agreements.

27

28

COMPLAINT

291.   Among other things, Defendant Quality Home misrepresented the nature of the work, the pricing, the method of payment, and falsely asserted that the U.S. Government would pay 30 percent of the costs.

292.   On information and belief, Quality Home knew these representations were false and misleading.

293.   Mr. Unser has suffered damages as a direct and proximate result of Defendants' actions.

## SEVENTH CAUSE OF ACTION

### *Recovery of the Bond Against Defendant Bond Company.*

294.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 294 in the Complaint.

295.   On information and belief, Defendant Quality Home has a bond of $12,500.00.

296.   Defendant Bond Company holds the bond for Quality Home.

297.   The bond is for the benefit of a homeowner, including Mr. Unser, for home improvements to the homeowner's personal family residence injured by a contractor's actions.

298.   Defendant Quality Home has violated contractor license law, including violations that are the basis for disciplinary action against the contractor's license.

299.   Defendant's violations of California Business and Professions Code sections that apply to contractors include, but are not limited to:

• Violating section 7159(c)(3)(B) for failure to provide the notice of cancellation, on the first page of the contracts, in the format required with the address information for where to send the notice;

• Violating section 7159(c) for failure to print in close proximity to the signatures of the homeowner and contractor that the homeowner has the right to require the contractor to have a performance and payment bond;

- Violating section 7159(d)(2) by failing to have both the name and registration number of the salesperson who solicited and negotiated the contract.

- Violating section 7159(d)(5) by having a stated contract price that is over $3,000 lower than the amount financed on the assessment agreement.

- Violating section 7159(d)(6) by failing to include under a separate heading from the contract total amount the finance charges that would be added to each assessment.

- Violating section 7159.1 by failing to include the notice that the home is being put up as a security.

- Violating section 7159.5(a)(5) by accepting payment that exceeds the value of the work performed or materials provided. Violation of this section by a licensed contractor is punishable by a fine not less than $100, but not more than $5,000 and/or imprisonment in a county jail not exceeding one year.

- Violating section 7163 by creating a false email and DocuSign account in order to sign both financing agreements as detailed above.

300.   Mr. Unser has suffered damages as a direct and proximate result of Defendant's actions.  He seeks to recover $12,500.00 from the bond.

### EIGHTH CAUSE OF ACTION

***Violations of the Consumers Legal Remedies Act, California Civil Code Sections 1750, et seq. Against Defendants Quality Home, Renovate America, and Renew Financial***

301.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 301 in the Complaint.

302.   The Consumer Legal Remedies Act ("CLRA") prohibits vagueness, unfair business practices, and deception by declaring them unlawful in any transaction intended to result or which results in the sale or lease of goods or services to any consumer.

303. The CLRA shall be liberally construed and applied to protect consumers against unfair and deceptive business practices.

304. Consumers are individuals who sought to acquire by purchase goods and services for personal, family, or household purposes as defined by Civil Code section 1761(d). Mr. Unser is a consumer under this definition.

305. Defendants are "persons" as defined by Civil Code section 1761(c).

306. Mr. Unser is a senior citizen with significant mental and physical limitations that substantially limits his activities.

307. The transactions described herein include the Second and Third Home Improvement Agreements, the HERO Loan, and the Agreement to Pay Assessments between Mr. Unser and the Defendants.

308. The contracts are agreements entered into between Mr. Unser, the property owner of record, and Defendants Quality Home, WRCOG, and CSCDA. Quality Home, Renovate America, and Renew Financial provide the home improvement goods and services detailed in those four contracts.

309. The Second and Third Home Improvement Agreements, the HERO Loan, and the Agreement to Pay Assessments constitute "transactions," as defined in Civil Code section 1761(e).

310. The transactions all occurred at Mr. Unser's primary residence. Defendants solicited Mr. Unser in door-to-door sales transactions.

311. This home solicitation was to senior citizens where a lien was placed against Mr. Unser's home for the purpose of paying for the home improvements.

312. As detailed above, there is an agency relationship between the contractors in this action and Renovate America and Renew Financial. On information and belief, the contractors are the sales force for Renovate America and Renew Financial. On information and belief, Renovate America and Renew Financial, supervise, train, and regulate the actions of its sales force, including Quality Home.

-52-

313.   Defendant Quality Home violated Civil Code section 1770(a)(2) and 1770(a)(3) by misrepresenting the source, sponsorship, approval, and certification of the goods and services and the affiliation with another.  For example, Defendants represented this as a "government" program that was funded by the government and that Mr. Unser's property taxes would not be raised by the program.

314.   Defendant Quality Home violated Civil Code section 1770(a)(5) by representing that the goods and services have approval, characteristics, uses, and/or benefits that they do not have or sponsorship, approval, status, affiliation, or connection that they do not have.

315.   Defendant Quality Home violated Civil Code section 1770(a)(14). Defendants have willfully and knowingly misrepresented the amounts they were entitled to collect and misrepresented Mr. Unser's obligations related to those amounts. Defendants did not inform Mr. Unser of the amount that was being financed and informed him that his property taxes would not increase.

316.   Defendants Renovate America and Renew Financial violated Civil Code section 1770(a)(23) by engaging in a home solicitation of a senior citizen that results in a loan being made that encumbers the primary residence of that senior citizen for the purpose of paying for home improvements.  This section also applies to third parties that have an agency relationship with the party engaged in the home solicitation or have actual knowledge of, or participated in the unfair practice. Therefore, Defendants Renew Financial and CSCDA have violated the above section.

317.   Defendants Renovate America and Renew Financial meet the definition of a mortgage lender as both are licensed as California Financial Lenders, under Civil Code section 1770(a)(23).

318.   Defendants persist in these violations and continue to engage in these unfair business practices.

/////

-53-

COMPLAINT

319.   The unfair and deceptive practices detailed herein are part of the patterns and practices of Defendants.

320.   Mr. Unser has suffered damages as a direct and proximate result of Defendants' violations.

321.   Mr. Unser demands that Defendants cure these violations within 30 days of receipt of this Complaint, pursuant to Civil Code section 1782, by paying for the damages caused to his home, releasing the liens against his home, repaying the money paid to date for the repairs, and paying Mr. Unser reasonable attorney's fees and costs.

322.   Mr. Unser further demands that Defendants cease and desist from the unfair, unlawful, and deceptive business practices detailed herein within 30 days of receipt of this Complaint, pursuant to California Civil Code section 1782.

## NINTH CAUSE OF ACTION

***Violations of the Unfair Competition Law, California Business and Professions Code sections 17200, et seq. Against All Defendants Except Defendant Reverse Mortgage Solutions, Inc. and Bond Company***

323.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 323 in the Complaint.

324.   California Business and Professions Code sections 17200, *et seq*. prevent businesses from engaging in unfair, unlawful, and fraudulent business practices.

325.   Defendants have engaged in unfair competition as defined by the Business and Professions Code section 17200.

326.   Defendants' acts and practices as alleged herein are unfair because the utility of the conduct is outweighed by the gravity of the harm it causes. Further, Defendants' conduct is unfair because it offends established public policy or is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  And, as detailed above, Defendants' conduct violates consumer laws,

-54-

including: the Elder Abuse Act; the Home Solicitation Act; and, the Consumers Legal Remedies Act; and, otherwise significantly threatens or harms consumers. Defendants' conduct has caused substantial injury to Mr. Unser and is not outweighed by countervailing benefits to consumers or to competition. The following acts are examples of the unfair and deceptive conduct Defendants engaged in:

- Failure to follow recommended PACE guidelines;
- Creating a false email address and false signature on the Financing Agreements;
- Violating Code of Federal Regulations, Title 16, section 429.1;
- Failing to verify affordability of PACE loan; and,
- Using high-pressure sale tactics to pressure Mr. Unser.

327.   Defendants' actions constitute unlawful competition because they engaged in the following acts:

- Violating California Elder Abuse Act;
- Violating the California Business and Professions Code sections 7159, *et seq.*;
- Violating the Home Solicitation Act;
- Engaging in fraud;
- Committing negligence; and,
- Violating the Consumers Legal Remedies Act.

328.   Defendants are engaging, have engaged, and there is a substantial likelihood that they will continue to engage in this unlawful and unfair competition.

329.   As a direct and proximate result of these violations, Mr. Unser has suffered injury in fact, including monetary damages.

/////

/////

/////

-55-

## **TENTH CAUSE OF ACTION**

### *Declaratory Relief that For Violations of the Tax Act and Temporary Restraining Order And Preliminary Injunction Against Reverse Mortgage Solutions*

330.   Mr. Unser realleges and incorporates by reference the allegations in paragraphs 1 through 330 in the Complaint.

331.   Reverse Mortgage Solutions is the loan servicer of Mr. Unser's reverse mortgage.

332.   On information and belief, Reverse Mortgage Solutions will lender place the tax assessments, including the fraudulent and illegal tax assessments detailed herein by WRCOG and CSCDA.

333.   Payment of these tax assessments will lead to irreparable harm, including foreclosure and the loss of Mr. Unser's home at a foreclosure sale.

334.   On information and belief, upon payment of the lender placed tax assessments on these fraudulent tax assessments, Reverse Mortgage Solutions will seek payment from Mr. Unser.

335.   In the past, Reverse Mortgage Solutions has initiated foreclosure proceedings for failure to pay the prior year's PACE tax assessments.

336.   On information and belief, Reverse Mortgage Solutions will force place the tax assessments unless restrained by this Court.

337.   By way of filing a separate motion, Mr. Unser will move for an issuance of a temporary restraining order and a preliminary injunction in to order to stop Reverse Mortgage Solutions Inc. from paying the property taxes related to this PACE loans and subsequently foreclosing on Mr. Unser's property.

338.   Mr. Unser will be irreparably harmed if he is not granted this injunction as it will cause him to lose his home before the conclusion of this lawsuit.

339.   At this time, Mr. Unser does not seek monetary damages against Reverse Mortgage Solutions, Inc.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Unser demands judgment against Defendants as follows:

1.   Damages in an amount to be determined at trial against Defendants WRCOG, CSCDA, Renovate America, Renew Financial, and Quality Home, except as to the Consumer Legal Remedies Act cause of action.

2.   Equitable rescission of the Second and Third Home Loan Agreements, the HERO Loan, and the Agreement to Pay Assessments, pursuant to the federal FTC Act;

3.   Declaratory relief that Mr. Unser does not have to pay the fraudulent and illegal PACE property tax assessments;

4.   Injunctive relief against Reverse Mortgage Solutions Inc., preventing them from paying the property taxes related to Mr. Unser's PACE loans and foreclosing on Mr. Unser based on such payment.

5.   Pursuant to Civil Code section 1780, that Defendants be permanently enjoined from violating the Consumers Legal Remedies Act, in connection with the violations alleged in this Complaint;

6.   Pursuant to Business and Professions Code section 17203, that the Defendants be permanently enjoined from violating Business and Professions Code section 17200, in connection with the violations alleged in this Complaint;

7.   Declaratory relief pursuant to the Home Solicitation Act that the Second and Third Home Improvement Agreements, the HERO loan, and the Agreement to Pay Assessments are each and all void;

8.   Declaratory relief affirming that Mr. Unser has cancelled the contracts at issue here as permitted under the Home Solicitation Act, that Mr. Unser does not owe any sum to any of the Defendants, and that the liens against their home must be removed;

COMPLAINT

9.     For a declaration that Defendants WRCOG and CSCDA do not have, and never have had, a valid lien on Mr. Unser's property arising from the any of the alleged contracts, including Quality Home Renovators, and may not assess or enforce any assessments on their property by reason of any of those alleged contracts.

10.    Treble damages for the wilful violations of Financial Elder Abuse Act;

11.    Quality Home pay $500.00 for violations of California Business and Professions Code section 7160;

12.    Punitive damages against Defendants, except as to the Consumer Legal Remedies Act cause of action;

13.    For civil penalties against Defendants, except as to the Consumers Legal Remedies Act cause of action;

14.    Interest, if applicable;

15.    Attorney's fees

16.    Costs; and,

17.    Any other and further relief that the court considers proper.


Dated:  March 15, 2018

Respectfully submitted,


By____/s/ Kathleen Box_____
Alysson Snow
Kathleen Box
*Attorney for Plaintiff*
Robert Unser

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT